IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JACKIE GILBERT CROSS, JR., ) | |
| ) | |
| Plaintiff, ) | Case No. 3:12-cv-1109 |
| ) | |
| v. ) | Judge Campbell / Knowles |
| ) | |
| THE METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a "Motion to Stay Discovery" (Docket No. 9) and a "Motion to Renew Motion to Stay Discovery" (Docket No. 38). The original Motion to Stay Discovery was filed by the four named Defendants in this action: Metropolitan Government of Nashville and Davidson County, Steve Anderson, William Loucks, and T. Gene Donegan.[1] Although it was somewhat unclear, the "Motion to Renew Motion to Stay Discovery" appeared to have been filed only by Defendant Steve Anderson. Docket No. 38. In a subsequent filing (Docket No. 44), the parties stated that they "are in agreement that discovery shall proceed as to all parties except Defendant Steve Anderson, whose participation in discovery will depend on this Court's resolution of his pending Motion to Renew Motion to Stay Discovery (Docket No. 38)."[2] Docket No. 44, p.1.

---

[1] Plaintiff has also sued John and/or Jane Does, who have not been identified.

[2] In view of this agreement, the undersigned has recommended that the instant Motion to Stay Discovery be DENIED AS MOOT with regard to Defendants Metro Government, William Loucks, T. Gene Donegan, and John and/or Jane Does. Docket No. 48, p. 1-2.

The instant Motion to Stay Discovery was filed contemporaneously with a Motion to Dismiss on behalf of the named Defendants that was based in part upon qualified immunity. Docket Nos. 7, 8. Judge Campbell referred the instant Motion to Stay Discovery to the undersigned for a Report and Recommendation. Docket No. 16.

Following the filing of the Motion to Dismiss and the Motion to Stay, Plaintiff has amended his Complaint several times. His current operative Complaint is headed "Second Amended Complaint." Docket No. 32. Defendants have filed a Partial Motion to Dismiss the Second Amended Complaint. Docket No. 34.

Plaintiff's federal claims are based upon 42 USC §1983. He also raises claims under state law. Plaintiff essentially alleges that he was the innocent victim of a criminal sting operation conducted by the Metro Police Department and known as "Operation Death Cooker." Docket No. 32, p. 2. That investigation targeted illegal methamphetamine manufacture and distribution.

Plaintiff avers that he went to a Wal-Mart pharmacy on February 13, 2011, to purchase medicine containing pseudoephedrine to treat a cold that he had. *Id*., p. 3. At approximately the same time, four men who were involved in a conspiracy with Theresa Kingsmill were purchasing pseudoephedrine from that Wal-Mart store. *Id*. The conspiracy involved these four men (and others) purchasing medicines containing pseudoephedrine, which they would give to Kingsmill, who would provide them to another suspect for the manufacture of methamphetamine. *Id*., p. 2-3.

Plaintiff avers that he was not involved in the conspiracy, but that he was indicted anyway, along with thirty-eight other people. *Id*., p. 5. He was charged with conspiracy to

2

manufacture methamphetamine and promoting methamphetamine manufacture. *Id*., p. 5-6. He claims that probable cause did not exist for his indictment and that Defendant Loucks "made misrepresentations and/or knowingly fabricated, manipulated, or falsified the evidence presented to the grand jury, and/or omitted exculpating evidence, and/or 'hid' the lack of evidence for criminal prosecution." *Id*., p. 6.

When he learned about the indictment, Plaintiff went to the police to clear himself, but he was arrested, jailed, and held until he posted bond. *Id*., p. 8. Subsequently, his employment with Metro public schools was terminated "solely because of the indictment and the notoriety surrounding it, including the publication of [a] press release." *Id.*

On January 12, 2012, the Davidson County District Attorney dismissed the criminal charges against Plaintiff by the entry of a *nolle prosequi*. *Id*. That same day, after the charges were nollied, he submitted a complaint about his wrongful indictment to the Metro Police's Office of Professional Accountability ("OPA"). *Id.*

Plaintiff avers that pursuant to a custom, practice, and/or policy of Metro, Defendant Anderson, the Chief of Police, "assigned or approved the assignment of the OPA complaint to Defendant Donegan for investigation, despite the fact that Donegan was part of Operation Death Cooker and thus, upon information and belief, had a role in determining against whom indictments would be sought, including [Plaintiff]." Defendant Donegan allegedly ignored the conduct of any other persons involved, including himself, and exonerated Loucks on the grounds that he had obtained a "true bill" against Plaintiff. All the named Defendants "accepted as satisfactory" Defendant Donegan's OPA report.

In his Second Amended Complaint, Plaintiff makes only the following specific

3

allegations against Defendant Anderson:

> 50. As Chief of Police, Defendant Anderson is responsible for supervision and operation of the Police Department and developer of its policies and procedures. As Chief of Police, his conduct is attributable to and representative of Metro.
>
> 51. Defendant Anderson knew or should have known that it was improper to assign the investigation to Defendant Donegan because Donegan was part of the Operation Death Cooker task force that sought the indictments against [Plaintiff] and as such Donegan would be motivated to protect himself and to exonerate his subordinate.
>
> 52. Defendants Metro, Anderson, and Donegan knew or should have known that the investigation of police misconduct by a supervising officer who participated in or supervised the conduct complained of encourages and condones conduct that violates constitutional rights.
>
> 53. Defendants Metro, Anderson, and Donegan, as well as intermediary officers in the chain of command, knew or should have known that failure to investigate or discipline officers for the baseless pursuit of criminal charges so long as the officers are able to obtain a criminal indictment encourages and condones conduct that violates constitutional rights.
>
> . . .
>
> 55. All of the Defendants knew or should have known probable cause did not exist to pursue criminal charges against [Plaintiff]. Defendant Anderson knew or should have known this after the OPA complaint was processed.
>
> . . .
>
> 65. Defendants Metro, Anderson, and Donegan acting under color of state law, unlawfully deprived [Plaintiff] of his substantive due process right to liberty (including physical freedom as well as reputation), and of his right to freedom from false arrest, false imprisonment, and malicious prosecution without probable cause, as secured by the Fourth and Fourteenth Amendments of the Constitution of the United States, all in violation of 42 USC Section 1983, by allowing the investigation into [Plaintiff's] OPA complaint to be conducted by Defendant Donegan.
>
> 66. Defendants Metro and Anderson, acting under color of state law, were deliberately indifferent to, and caused the deprivation of

> [Plaintiff's] substantive due process right to liberty (including physical freedom as well as reputation), and his rights to be free from inadequate investigation, false arrest, false imprisonment, and malicious prosecution, as secured by the substantive due process rights secured by the Fourth and Fourteenth Amendments of the Constitution of the United States, all in violation of 42 USC Section 1983, by a custom, practice and policy of exonerating misconduct so long as an officer is able to procure an indictment.

Docket No. 32, p. 9-13.

In support of the instant Motion to Stay Discovery, Defendant argues that the qualified immunity defense is an "immunity from suit, rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 US 511, 526 (1985). As the Sixth Circuit has stated, "Qualified Immunity is intended not only to protect officials from civil damages, but just as importantly, to protect them from the rigors of litigation itself, including the potential disruptiveness of discovery." *Everson v. Leis,* 556 F.3d 484, 491 (6th Cir. 2009). Thus, "questions of qualified immunity should be resolved 'at the earliest possible stage in the litigation,' or else the 'driving force' behind the immunity - avoiding unwarranted discovery and other litigation costs - will be defeated.'" *Id.* at 492, *citing Pearson v. Callahan*, 555 US 223, 231 (2009).

Additionally, the U.S. Supreme Court has stated:

> Once a defendant pleads a defense of qualified immunity, "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. . . . Until this threshold immunity question is resolved, discovery should not be allowed."

*Siegert v. Gilley*, 500 US 226, 231 (1991)(citation omitted).

Moreover, "When the defense of qualified immunity is raised, it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity." *Ciminillo v. Streicher,* 434 F.3d 461, 466 (6th Cir. 2006).

5

Defendant Anderson further argues that this Court has previously stayed discovery in cases where individual defendants raise the qualified immunity defense in a Motion to Dismiss. *See Arnold v. Metro Govt, et al.,* 3:09-163, Docket No. 9; *Heney v. Metro Govt, et al.,* 3:09-0847, Docket No. 46; *Kovach v. Metro Nashville Public Schools, et al.,* 3:09-0886, Docket No. 52.

Plaintiff has filed a Response in Opposition to the Motion to Stay. Docket No. 22. Much of Plaintiff's argument relates more to the Motion to Dismiss than to the Motion to Stay. Plaintiff argues that Defendants are not entitled to qualified immunity, thus discovery should not be stayed. Plaintiff argues that qualified immunity is inappropriate in the face of a factual dispute, although Plaintiff presents no factual dispute with regard to any of the actions or inactions of Defendant Anderson. Plaintiff's main argument appears to be that someone (apparently Detective Loucks) must have wrongfully testified before the grand jury because Plaintiff was not guilty, yet he was indicted anyway.

As discussed above, Plaintiff focuses on two areas with regard to Defendant Anderson: (1) deprivation of Plaintiff's substantive due process right "by custom, practice and policy of exonerating misconduct so long as an officer is able to procure an indictment"; and (2) depriving Plaintiff of his substantive due process right "by allowing the investigation into [Plaintiff's] OPA complaint to be conducted by Defendant Donegan."

As discussed above, it is appropriate for the Court to address the qualified immunity issue before the Motion to Stay is decided. The current Motion to Dismiss, which raises qualified immunity, however, is pending before Judge Campbell, not before the undersigned. The undersigned obviously does not wish to address an issue that is pending before Judge

6

Campbell. But part of Plaintiff's argument is that Defendant Anderson is not entitled to qualified immunity and, therefore, there is no basis to stay discovery, and part of Defendant Anderson's argument is that he is entitled to qualified immunity and, therefore, he is entitled to a stay of discovery. The undersigned believes that it is necessary to touch upon matters that could pertain to the Motion to Dismiss in connection with the Motion to Stay, but nothing discussed herein should be construed as expressing any opinion as to what Judge Campbell may or may not decide.

With regard to Plaintiff's first claim, he provides no facts to support the proposition that there exists "a custom, practice and policy of exonerating misconduct so long as an officer is able to procure an indictment." Moreover, Plaintiff offers no facts to support the proposition that, even if there is such a custom, practice and policy, Defendant Anderson had anything to do with it. The Supreme Court has made it clear that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* [*v. Dept. of Soc. Servs.*, 436 US 658 (1978)], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *City of Oklahoma v. Tuttle*, 471 US 808, 823-24 (1985).

Plaintiff's second argument is that Defendant Anderson deprived Plaintiff of his substantive due process right to liberty "by allowing the investigation into [Plaintiff's] OPA complaint to be conducted by Defendant Donegan." Once again, the Court cannot accept Plaintiff's argument. As discussed above, Plaintiff admits that the indictment was nollied *before* Plaintiff filed his OPA complaint. Any damages suffered by Plaintiff necessarily occurred as a result of the alleged wrongful indictment, not because of a "wrongful" OPA investigation.

7

Plaintiff does not even attempt to aver that he suffered damages as a result of the OPA investigation. Moreover, the OPA investigation had nothing to do with depriving Plaintiff of any constitutional or federal or state rights.

Thus, Plaintiff cannot show that Defendant Anderson violated any of his constitutional rights.

The above discussion raises serious doubts as to whether Plaintiff has stated a claim against Defendant Anderson. In a case involving a claim of qualified immunity, the Court must be mindful of the directives of the Supreme Court in *Ashcroft v. Iqbal*, 556 US 662 (2009). The *Iqbal* Court stated:

> Respondent next implies that our construction of Rule 8 should be tempered where, as here, the Court of Appeals has "instructed the District Court to cabin discovery in such a way as to preserve" petitioners' defense of qualified immunity "as much as possible in anticipation of a summary judgment motion." . . . We have held, however, that the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process. *Twombly, supra,* at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.")(internal quotation marks and citations omitted)).
>
> Our rejection of the careful-case-management approach is especially important in suits where Government-official defendants are entitled to assert the defense of qualified immunity. The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery." . . . There are serious and legitimate reasons for this. If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though

8

Case 3:12-cv-01109   Document 49   Filed 04/23/13   Page 8 of 10 PageID #: 522

> necessary to ensure that officials comply with the law, exacts
> heavy costs in terms of efficiency and expenditure of valuable time
> and resources that might otherwise be directed to the proper
> execution of the work of the Government.
>
> . . .
>
> We decline respondent's invitation to relax the pleading
> requirements on the ground that the Court of Appeals promises
> petitioners minimally intrusive discovery. That promise provides
> especially cold comfort in this pleading context, where we are
> impelled to give real content to the concept of qualified immunity
> for high-level officials who must be neither deterred nor detracted
> from the vigorous performance of their duties. Because
> respondent's complaint is deficient under Rule 8, he is not entitled
> to discovery, cabined or otherwise.

556 US at 684-86.

For the foregoing reasons, the undersigned recommends that Defendant Anderson's Motion to Stay Discovery be GRANTED. The undersigned further recommends that the instant "Motion to Renew Motion to Stay Discovery" be DENIED AS MOOT.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

9

_____
E. Clifton Knowles
United States Magistrate Judge

10