IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JACKIE GILBERT CROSS, JR. | ) |
| | ) |
| v. | ) NO. 3-12-1109 |
| | ) JUDGE CAMPBELL |
| METROPOLITAN GOVERNMENT | ) |
| OF NASHVILLE/DAVIDSON | ) |
| COUNTY, et al. | ) |

MEMORANDUM

Pending before the Court is "Defendants' Partial Motion to Dismiss Second Amended Complaint (Docket No. 34). For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part.

FACTS

This action arises from a criminal sting operation known as "Operation Death Cooker," conducted by the Metropolitan Government of Nashville and Davidson County ("Metro") Police's Special Investigations Division and targeting illegal methamphetamine manufacture and distribution. Docket No. 32 (Second Amended Complaint), ¶ 11. Plaintiff Cross alleges that Defendants illegally targeted and caused criminal charges to be brought against him with no evidence that Plaintiff had committed a crime. Plaintiff contends that he was falsely arrested and imprisoned and that, because of this indictment, arrest and imprisonment, his employment with Metro's Public School was terminated.

Plaintiff asserts that the Davidson County District Attorney dismissed the criminal charges against Plaintiff by entry of a *nolle prosequi*. On that same day, Plaintiff submitted a complaint to the Metro Police Office of Professional Accountability about the alleged wrongful indictment. Plaintiff avers that the Chief of Police assigned Plaintiff's Complaint to one of the officers who had

a role in Plaintiff's indictment. Plaintiff claims that this officer ignored the conduct of others involved, placed responsibility upon one officer alone, and then exonerated that officer.

Plaintiff also contends that the "nollied" charges remain on his record despite an order of expungement entered on January 25, 2012. Plaintiff alleges that he was subsequently stopped by a Metro police officer, his car was searched, and he was placed in the patrol car in handcuffs, all because the wrongful charge remained on his record. He was subsequently released without being charged.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 and identifies his causes of action as follows:

1. Deprivation of his Fourth and Fourteenth Amendment substantive due process rights to liberty in physical freedom and reputation and freedom from inadequate investigation, false arrest, false imprisonment, and malicious prosecution without probable cause;

2. Deprivation of his substantive due process right to liberty by engaging in conduct that shocks the conscience by virtue of Defendants' inadequate investigation, decision to seek an indictment without probable cause, and arresting and imprisoning Plaintiff;

3. Deliberate indifference to Plaintiff's constitutional rights;

4. Deprivation of Fourth and Fourteenth Amendment rights by Metro for permitting internal investigations of police misconduct to be conducted by a supervisory officer who participated in or supervised that misconduct;

5. Deprivation of Fourth and Fourteenth Amendment rights by Metro for failure to investigate or discipline officers for pursuit of unwarranted criminal charges;

6. Deprivation of Fourth and Fourteenth Amendment rights to liberty in physical freedom and reputation and freedom from inadequate investigation, false arrest, false imprisonment and malicious prosecution without probable cause;

7. Deprivation of his Fourteenth Amendment liberty interest in freedom from damage to his reputation by firing him from his Metro job as a result of the wrongful indictment;

8. Violation of the Fourth Amendment for seizure of Plaintiff and search of his vehicle without probable cause; and

9. Violation of the Fourth Amendment by failure to properly train or supervise with respect to search and seizure.

Docket No. 37.

Plaintiff also alleges state law claims for (1) negligent, reckless and/or intentional breach of duty to investigate; (2) false arrest, false imprisonment and malicious prosecution; (3) defamation; (4) false light invasion of privacy; and (5) false arrest and/or false imprisonment with regard to the seizure of Plaintiff and search of his vehicle. *Id.*

Defendant Chief of Police Anderson has been dismissed from this action. Docket No. 50. The other named Defendants - Metro, Donegan and Loucks - have moved to dismiss several of Plaintiff's claims. Docket No. 34.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## DEFENDANT METRO

Defendants contend that Plaintiff has alleged no facts to support a finding of a custom, policy or practice by Metro which causes constitutional violations. To establish municipal liability under Section 1983, a plaintiff must establish that the plaintiff's harm was caused by a constitutional violation and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Miller v. Sanilac County,* 606 F.3d 240, 255 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an implementation of the municipality's official policies or established customs. *Id*.[1] Regardless of how the policy arises, the plaintiff must show (1) that a municipal policy exists, and (2) that the policy was the moving force behind the alleged constitutional violation. *City of Canton, Ohio v. Harris*, 109 S.Ct. 1197, 1205 (1989).

---

[1] There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; and (4) a custom of tolerance or acquiescence of federal rights violations. *Spears*, 589 F.3d at 256.

4

Plaintiff's Second Amended Complaint alleges that Metro has a custom, practice or policy of permitting internal investigations of police misconduct to be conducted by a supervisory officer who participated in or supervised that misconduct. Docket No. 32, ¶ 63. Plaintiff also asserts that Metro has a custom, practice or policy of failure to investigate or discipline officers for the pursuit of unwarranted criminal charges so long as the officers are able to obtain a criminal indictment. *Id*., ¶ 64. Finally, Plaintiff contends that Metro fails to train or supervise its officers in a manner that complies with the Fourth Amendment requirement of probable cause for searches and seizures and specifically trains them to seize and search without probable cause. *Id*., ¶ 70.

Defendants argue that Plaintiff has alleged no facts other than his own situation to contend there is a custom, practice or policy. Plaintiff responds by asserting that his facts do not rely on one incident; but, rather his allegations show there were multiple and repeated violations of his Fourth and/or Fourteenth Amendment rights. Plaintiff misunderstands Defendants' argument.

Plaintiff must allege facts to show a *custom, practice or policy* of permitting internal investigations of police misconduct to be conducted by a supervisory officer who participated in the or supervised that misconduct, not just that Defendants permitted such an investigation with regard to Plaintiff's claim. Plaintiff must allege facts to show a *custom, practice of policy* of not investigating or disciplining officers for the pursuit of unwarranted criminal charges so long as the officers are able to obtain a criminal indictment, not just that Defendants failed to investigate or discipline with regard to Plaintiff's complaint. Similarly, Plaintiff must allege facts to show a *custom, practice or policy* of failing to train or supervise officers about probable cause for searches and seizures, not just that Defendants seized Plaintiff and searched his car without probable cause.

Plaintiff has not alleged facts that would fall within the narrow range of single-incident liability. *Connick v. Thompson*, 131 S.Ct. 1350, 1361 (2011). Plaintiff has not alleged facts sufficient to show that a custom, practice or policy of Defendant Metro was the moving force behind the alleged constitutional violations. Therefore, Defendant Metro's Motion to Dismiss the claims against it is granted, and those claims are dismissed.

## FREEDOM FROM STIGMA

Next, Defendants contend that Plaintiff's claim for freedom from damage to his reputation fails as a matter of law. An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination. *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997). The Fourteenth Amendment forbids state actors from depriving individuals of such liberty interests without due process of law. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002). Once a plaintiff has established the existence of a liberty interest, he is entitled to a name-clearing hearing if he requests one. *Id.*

The first element which Plaintiff in this case must allege is that the stigmatizing statements were made in conjunction with his termination from employment. *Quinn*, 293 F.3d at 320. Here, the alleged defamatory statements were made in a press release concerning Operation Death Cooker and the indictment, not in conjunction with Plaintiff's employment or termination therefrom.

The Sixth Circuit also requires that a plaintiff raising this claim must show that he requested a name-clearing hearing after he was fired and was denied that hearing. Plaintiff has not alleged that he requested a name-clearing hearing which was denied or that he was denied notice and the

6

opportunity to be heard. Therefore, Plaintiff's alleged deprivation of his liberty interest in his reputation must be dismissed.[2]

## SUBSTANTIVE DUE PROCESS

Plaintiff has alleged violations of his Fourth and Fourteenth Amendment substantive due process rights to physical freedom and reputation and freedom from inadequate investigation, false arrest, false imprisonment, and malicious prosecution without probable cause. Plaintiff has also alleged that his substantive due process rights were violated by Defendants' inadequate investigation,
decision to seek an indictment without probable cause, and arresting and imprisoning Plaintiff.

"Substantive due process" generally reflects the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). An action of state or local government which "shocks the conscience" of the federal court may violate substantive due process. *Id.* at 1217. Only the most egregious official conduct is arbitrary in the constitutional sense. *Remer v. Burlington Area School Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002).[3]

---

[2] Plaintiff alleges both a procedural and a substantive due process violation in this claim. This claim is a procedural due process claim, not a substantive due process claim. *See Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 502 (6th Cir. 2007).

[3] Substantive due process protects two types of privacy rights. It protects an individual's right to make personal decisions relating to marriage, procreation, contraception, family relationships, child rearing and education. *Bailey v. City of Port Huron*, 507 F.3d 364, 367 (6th Cir. 2007). It also protects an individual's interest in avoiding disclosure of personal matters. *Id.* The Sixth Circuit has held that there is no constitutional right to privacy in one's criminal record. *Id.* As a matter of constitutional law, a criminal suspect does not have a right to keep the information contained in a police report outside of the public domain. *Id.* at 368.

7

The Supreme Court has stated that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized substantive due process notion, must be the guide for analyzing these claims. *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1013 (6th Cir. 1999) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Here, Plaintiff's claims fall under the specific Fourth Amendment protection from unreasonable searches and seizures. His claims all arise from his alleged wrongful indictment, arrest and imprisonment and fall within the purview of the Fourth Amendment.

Moreover, Plaintiff's claims - even taken as true, as the Court must do on this Motion - do not rise to the extraordinary level of "shocking the conscience" required for a substantive due process claim. For these reasons, Plaintiff's substantive due process claims are dismissed.

## DEFAMATION

Defendants argue that Plaintiff's defamation claim should be dismissed because no false statement was published. To establish a claim of defamation under Tennessee law, the Plaintiff must show that (1) a party published a statement (2) with knowledge that the statement is false and defaming to the other or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Evans v. Walgreen* Co., 813 F.Supp.2d 897, 936 (W.D. Tenn. 2011); *Sullivan v. Baptist Memorial Hospital*, 995 S.W.2d 569, 570 (Tenn. 1999).

The publication at issue herein is the press release which identified those persons indicted in the Operation Death Cooker investigation. Plaintiff contends that the press release falsely implied that he was hired to purchase medication for use in illegal methamphetamine manufacture. Plaintiff's name and picture, however, follow this sentence: "In addition to Oakley and Kingsmill,

8

the other defendants indicted are identified as:" Then follow the pictures and names of the 37 other individuals indicted, including Plaintiff. Docket No. 34-1. In other words, the publication indicates that Plaintiff was indicted, which is a true statement. The press release states that "the 37 other defendants are charged with engaging in a meth conspiracy and promoting the manufacture of meth." *Id*. This also is a true statement. Plaintiff has not sufficiently alleged a defamation claim under Tennessee law, and that claim is dismissed.

## FALSE LIGHT

The Tennessee Supreme Court recognizes that false light is a distinct, actionable tort. *West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 645 (Tenn. 2001). The facts may be true in a false light claim. However, the angle from which the facts are presented, or the omission of certain material facts, results in placing the plaintiff in a false light. *Id*, n. 5.

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Brown v. Mapco Exp., Inc.,* 393 S.W. 3d 696 (Tenn. Ct. App. 2012).

Plaintiff contends that the press release at issue cast Plaintiff's lawful Sudafed purchase in the false light of being related to illegal methamphetamine activities. The Court finds that Plaintiff has sufficiently stated a claim for false light under Tennessee law.

## CONCLUSION

9

For these reasons, Defendants' Partial Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiff's claims against Defendant Metro, Plaintiff's claims for deprivation of his liberty interest in his reputation, Plaintiff's substantive due process claims, and Plaintiff's defamation claims are DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE