IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JACKIE GILBERT CROSS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3-12-1109 |
| ) | JUDGE CAMPBELL |
| METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE/DAVIDSON ) | |
| COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment, Docket No. 92, and the Motion for Summary Judgment filed by Defendants William Loucks and Gene Donegan ("Defendants"), Docket No. 94. For the reasons stated herein, Defendants' motion will be GRANTED as to all claims except Plaintiff's false-light claim, which will be dismissed without prejudice, and Plaintiff's Motion will be DENIED as moot.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This action arises from a criminal sting operation known as "Operation Death Cooker," conducted by the Special Investigations Division ("SID") of the Metropolitan Nashville Police Department ("MNPD"), which targeted illegal methamphetamine manufacture and distribution. Plaintiff alleges that Defendants caused criminal charges to be brought against him without probable cause to believe that he had committed a crime and that his being indicted on a criminal charge led to his being terminated from his employment with the Metro public school system. During the events that led to the filing of this Complaint, Defendant Loucks was a detective in the SID and led the Operation Death Cooker investigation. Defendant Donegan was a sergeant, the head of the SID, and

Detective Loucks' supervisor. As the Court will deny Plaintiff's motion for summary judgment as moot, the facts herein are those viewed in the light most favorable to the Plaintiff.

On February 13, 2011, Plaintiff purchased the medication pseudoephedrine, commonly known by the trade name "Sudafed," at the pharmacy counter of a Wal-Mart store in Nashville to treat his cold symptoms. Pseudoephedrine products are used in the manufacture of methamphetamine and can only be sold by licensed pharmacies. Because of the potential for illegal use of pseudoephedrine, Tennessee law limits how much of the drug an individual can purchase within a thirty-day time period. Individuals who manufacture methamphetamine often hire individuals, known by police as "smurfs," who collectively gather the requisite amount of pseudoephedrine necessary for production of methamphetamine while making it appear that they are separate, unrelated purchases made for individual, proper medical usage. Unbeknownst to Plaintiff, his pseudoephedrine purchase occurred within the same fifteen minutes as the purchases made by five men who were, on that same day, apprehended in the Wal-Mart parking lot with a woman named Teresa Kingsmill. Detective Loucks was actively investigating Teresa Kingsmill for running a methamphetamine cook group along with her boyfriend Shane Oakley. Ms. Kingsmill had paid each of the five homeless men with her to purchase pseudoephedrine for use in manufacturing methamphetamine. Plaintiff was not a part of this criminal enterprise in any way.

Wal-Mart entered the purchases made on February 13, 2011, including purchaser information, into a statewide database. That database downloads information into the Tennessee Methamphetamine Task Force Information System ("TMIS"), which allows law enforcement agencies to track pseudoephedrine purchases. When Detective Loucks obtained the pseudoephedrine purchase log from TMIS for February 13, 2011, he saw Plaintiff's name on the list at the same time

frame as the purchases made by Ms. Kingsmill's agents. The proximity in time of the purchases coupled with statements made by Teresa Kingsmill that day, caused Detective Loucks to believe Plaintiff was involved in the criminal enterprise. As a result, Detective Loucks included Plaintiff's name in the case summary he created to keep track of the suspects in the investigation. Detective Loucks wrote under the pictures and names of the five men questioned with Teresa Kingsmill on February 13, 2011 that each was a multiple purchaser of pseudoephedrine and was present in the Wal-Mart parking lot with Ms. Kingsmill on that date. Detective Loucks cut and pasted that entry in the word-processing document from one individual's description to the next, and mistakenly cut and pasted the same description under Plaintiff's name. Detective Loucks admits this mistake, states that he did not realize the mistake until after Plaintiff was indicted and filed a complaint with the MNPD Office of Professional Accountability, but stands by his belief that, given other information he obtained in the investigation, primarily statements by Teresa Kingsmill, there was probable cause to indict Plaintiff.

Starting on February 13, 2011, and on several occasions of later questioning by the police, Ms. Kingsmill made a number of vague and ambiguous statements. The parties vigorously dispute the content of some of Ms. Kingsmill's statements and the reasonableness of Detective Loucks' interpretations of her statements. The bottom line is that Plaintiff maintains that he was not involved in the manufacture of methamphetamine in any manner, that there was no probable cause for his indictment, that Detective Loucks' investigation was incompetent, at best, and that Detective Loucks' incompetent investigation and the misleading information he testified to before the grand jury caused Plaintiff to be wrongfully indicted. The Court will not detail here the many factual disputes about the nature of the evidence against Plaintiff, but instead will assume, for the purpose

of considering Defendants' motion for summary judgment, which requires the Court to view the evidence in the light most favorable to the non-moving party, that Plaintiff is correct in asserting that Detective Loucks' investigation was sloppy and that there was not probable cause to support his indictment.

Detective Loucks gave his case summary and other evidence he had collected to Davidson County Assistant District Attorney ("ADA") Homlar. ADA Homlar performed several tasks with respect to the individuals identified in the case summary, including reviewing biographical information, conducting criminal background checks, reviewing warrants in unrelated cases, reviewing TMIS reports of known associates, listening to the jail calls of Ms. Kingsmill, and being present when the search warrant was executed at the Kingsmill/Oakley residence. He also met with at least one individual personally because the case summary entry for that individual conflicted with other evidence. After further investigation, ADA Homlar concluded that individual was not a smurf. With respect to Plaintiff, ADA Homlar conducted a TMIS search and a criminal background check. He also reviewed an affidavit of a previous unrelated charge for which Jackie Cross received a conditional judgment, and ran a TMIS search on an individual referenced in that affidavit.

ADA Homlar prepared the indictment that was presented to the grand jury on November 14, 2011, stemming from Operation Death Cooker. The parties agree that Detective Loucks did not have authority to include or exclude an individual from the indictment. It was ADA Homlar's responsibility to review the evidence to determine if it would support a conviction and to exclude any individual for whom there was insufficient evidence to pursue charges. ADA Homlar never had a discussion with Sergeant Donegan about who should or should not be included in the indictment. Sergeant Donegan maintains he was not involved with the Operation Death Cooker investigation

4

at all, although ADA Homlar testified that Sergeant Donegan at times was involved in a hands-on way in investigations and that he thought that Sergeant Donegan may have been involved in an incident in which police officers followed Ms. Kingsmill by car.

ADA Homlar prepared a PowerPoint presentation to assist Detective Loucks in his presentation to the grand jury, which Detective Loucks only had about five minutes to review before presenting it to the grand jury. Docket No. 95-3, at 15, 185 (Homlar Dep.). The parties have presented the Court with copies of slides from the PowerPoint presentation that were shown to the grand jury and also with Detective Loucks' declaration in which he details his statements to the grand jury about Plaintiff. Plaintiff believes the slides and statements Detective Loucks made to the grand jury about his involvement were misleading, particularly a slide that listed his name among six individuals identified as "co-conspirators" with Teresa Kingsmill at the Wal-Mart on February 13, 2011. Detective Loucks stands by the information contained in the slides and his testimony, arguing that he believes other statements made by Ms. Kingsmill created probable cause to believe Plaintiff was, in fact, a co-conspirator with Ms. Kingsmill at the Wal-Mart, even though the police did not see him in her car.

On November 22, 2011, after the grand jury returned an indictment against Plaintiff and thirty-eight other individuals allegedly involved in the methamphetamine cook group, the MNPD released a press release describing Operation Death Cooker, and including the names of all thirty-nine individuals indicted. Plaintiff's name and picture were included in the press release. Docket No. 95-20 (press release). Detective Loucks gave Sergeant Donegan a "brief summary" for use in the press release and also had a brief conversation with the MNPD public affairs manager before the press release was issued. Docket No. 120-1, at 159–60 (Loucks' Depo.). Sergeant Donegan also was

5

interviewed by a local news station, which identified him as having worked undercover, along with his team, on Operation Death Cooker. The only indicted individuals who were referenced by name in the television news coverage were Shane Oakley and Teresa Kingsmill.

Once arrested, Plaintiff's criminal defense attorney told ADA Homlar that Mr. Cross denied being involved in any criminal activity. This led ADA Homlar to review the evidence against Plaintiff and to discover that the police had not, in fact, seen him with Teresa Kingsmill in the Wal-Mart parking lot, as Detective Loucks' case summary mistakenly indicated. ADA Homlar determined that there was insufficient evidence to proceed against Plaintiff and dismissed the criminal charges against him by entry of a *nolle prosequi*.

On January 12, 2012, Plaintiff submitted a complaint with MNPD's Office of Professional Accountability alleging that Detective Loucks had wrongfully investigated and sought his indictment. The OPA assigned Sergeant Donegan to investigate the complaint. Sergeant Donegan discussed the complaint with ADA Homlar and Detective Loucks. Plaintiff argues that Donegan's discussion with ADA Homlar was inappropriately informal and that his report of their discussion was inaccurate.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. On May 7, 2013, the Court dismissed all of Plaintiff's claims against Defendant Metropolitan Government of Nashville/Davidson County, his claims against all Defendants for deprivation of his liberty interests in his reputation, his substantive due process claims, and his defamation claims. Plaintiff articulates his federal causes of action against Defendants Loucks and Donegan under § 1983 as follows:

1. False arrest, false imprisonment, and malicious prosecution claims against both Loucks and Donegan arising from inadequate investigation, pursuit of criminal charges, arrest and imprisonment of Plaintiff without probable cause, Docket No. 15 ¶ 60;

2. False arrest, false imprisonment, and malicious prosecution claims against Defendant Donegan for conducting the investigation into Mr. Cross's OPA complaint and for exonerating Loucks based on the grand jury's return of a "true bill" against Plaintiff, *id.* at ¶¶ 65–67;

3. Unspecified "deliberate indifference" claim against Defendant Donegan for his actions as a member of the Operation Death Cooker task force and as Louck's immediate supervisor, for his pursuit of criminal charges against Plaintiff without probable cause, *id.* at ¶ 62.

Plaintiff articulates his remaining state law claims against Defendants Loucks and Donegan as follows:

1. Unspecified claim for "negligently, recklessly and/or intentionally" breaching their "duty to investigate," *id.* at ¶ 72;

2. Unspecified claim for pursuing criminal action when the "knew or should have known evidence did not exist" to support the charges, *id.* at ¶ 73;

3. False arrest, false imprisonment, and malicious prosecution, *id.* at ¶ 75;

4. False light claim based on the publicity surrounding Plaintiff's purchase of cold medicine, *id.* at ¶ 77.

## ANALYSIS

### I. Summary Judgment Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all

inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242 at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. Defendants' Motion for Summary Judgment

Plaintiff brings federal claims pursuant to 42 U.S.C. §1983, as well as state-law claims, against Detective Loucks and Sergeant Donegan. Defendants move for summary judgment on all of these claims, arguing that they did not violate federal or state law. Defendants argue, in the alternative, that if they did violate federal or state law, they are entitled to qualified immunity. The Supreme Court has set forth a two-part inquiry for determining whether qualified immunity will operate as an "immunity from suit" in a given case. "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the court must address whether the right was clearly established . . . on a . . . specific level" at the time of the official's actions. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Tennessee law similarly provides qualified or good faith immunity to state law tort claims asserted against government employees. *Willis v. Neal*, 247 F.App'x 738 , 745 (6th Cir. 2007).

### A. Federal and State Claims Against Detective Loucks Related to the Investigation and Indictment

Plaintiff does not have a legally cognizable federal claim for false arrest or a state-law claim for false imprisonment. All of Plaintiff's federal and state claims related to Defendants' investigation and grand jury presentment are properly characterized as malicious-prosecution claims. In the Sixth Circuit, wrongful investigation, prosecution, conviction, and incarceration all fall within "a separate constitutionally cognizable claim of malicious prosecution." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). As the Sixth Circuit explained in *Sykes v. Anderson*, "[t]he 'tort of malicious prosecution' is 'entirely distinct' from that of false arrest, as the malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process.'" *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007). Tennessee law similarly distinguishes between false imprisonment (Tennessee's terminology for "false arrest" claims), and malicious prosecution claims. In Tennessee, when "the process on which an arrest is made is regular and legal in form and issued by a court of competent authority, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution." *Sullivan v. Young*, 678 S.W. 2d 906, 910 (Tenn. Ct. App. 1984). Plaintiff was not arrested and later indicted. He was only indicted. Thus, he was not detained without legal process. Accordingly, the Court will enter judgment for Detective Loucks on Plaintiff's federal claim for false arrest and state claim for false imprisonment.

As to the malicious-prosecution claim, Detective Loucks, as a grand jury witness, "has absolute immunity from any § 1983 claim based on [his] testimony." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012). In *Rehberg*, the chief investigator for a district attorney faced a § 1983 lawsuit based on his testimony to the grand jury that led to Rehberg's indictment. As the *Rehberg* Court explained, the Supreme Court had previously held in *Briscoe v. LaHue*, 460 U.S. 325, 332–33

9

(1983), that a trial witness has absolute immunity from suit under § 1983 "with respect to *any* claim based on the witness' testimony." *Rehberg*, 132 S. Ct. at 1505 (emphasis in original). In *Rehberg*, the Supreme Court extended the provision of absolute immunity from the context of trial testimony to that of grand jury testimony. As the Supreme Court explained,

> [I]t is almost always a prosecutor who is responsible for the decision to present a case to a grand jury, and in many jurisdictions, even if an indictment is handed up, a prosecution cannot proceed unless the prosecutor signs the indictment. It would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute.

*Id.* at 1507–08 (footnote and citation omitted).

The Supreme Court was clear that this broad immunity applies not only to a witness's actual testimony to the grand jury, but also to preparatory activities leading up to the grand jury testimony:

> [The rule] that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony . . . may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution. Were it otherwise, "a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." *Buckley v. Fitzsimmons*, 509 U.S. 259, 283 (1993) (Kennedy, J., concurring in part and dissenting in part). In the vast majority of cases involving a claim against a grand jury witness, the witness and the prosecutor conducting the investigation engage in preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony. We decline to endorse a rule of absolute immunity that is so easily frustrated.

*Id.* at 1506–07 (some internal citations omitted).

The Supreme Court reasoned that providing absolute immunity for grand jury witnesses supported the functioning of the grand jury system which "depends upon the secrecy of grand jury proceedings." *Id.* at 1509 (citation omitted). The Court held that the justifications for absolute

immunity for trial witnesses applied equally to grand jury witnesses: "In both contexts, a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence. And in neither context is the deterrent of potential civil liability needed to prevent perjurious testimony." *Id.* at 1505. The Court was also concerned that, if "preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution." *Id.* at 1509 (internal quotation marks and citation omitted).

Accordingly, the Court will enter judgment for Detective Loucks on all of Plaintiff's federal and state law claims against Detective Loucks related to the investigation, the preparatory work leading up to the presentment of evidence to the grand jury, and Loucks' grand jury testimony. This includes Plaintiff's federal and state claims for malicious prosecution, his claim that Detective Loucks "negligently, recklessly and/or intentionally" breaching his "duty to investigate," and his unspecified claim that Detective Loucks pursued criminal action when he "knew or should have known evidence did not exist" to support the charges. Detective Loucks is protected by absolute immunity from all of these claims.

### B. Federal and State Claims Against Sergeant Donegan Related to the Investigation and Indictment

For the reasons already stated, Plaintiff has no legally cognizable federal claim for false arrest or state claim for false imprisonment because he was not arrested before being indicted. The Court will enter judgment for Sergeant Donegan on these claims.

As for the malicious-prosecution claim, Plaintiff's brief specifies that he is only alleging that Sergeant Donegan is liable for his role as Detective Loucks' supervisor, not for his direct

11

participation. Docket No. 112, at 15 (Defs.' Br.). The Sixth Circuit has held that *respondent superior* is not a proper basis for liability under Section 1983:

> § 1983 liability must be based on more than *respondeat superior*, or the right to control employees. Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (internal quotation marks and citation omitted). Even assuming that there was not probable cause to indict Plaintiff, the evidence Plaintiff has presented to the Court, viewed in the light most favorable to him, does not demonstrate that Defendant Donegan encouraged or otherwise directly participated in Officer Loucks' decision to include Jackie Cross as a suspect, was involved in any of the communications between Officer Loucks and ADA Homlar about the evidence against Mr. Cross, or participated in the decision to seek an indictment against Mr. Cross from the grand jury. There is no evidence that he encouraged or directly participated in any misconduct. Thus, the Court will enter judgment for Sergeant Donegan on Plaintiff's federal and state malicious-prosecution claims.

Plaintiff's state law claim for negligence against Sergeant Donegan also fails. To prevail on a negligence claim, Plaintiff must demonstrate "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011) (citations omitted). Plaintiff has not presented sufficient evidence from which a reasonable juror could conclude that Sergeant Donegan was involved in the investigation of Jackie Cross such that he owed a duty of care to Plaintiff, that his conduct fell below the applicable standard of care,

or that his conduct was the proximate cause of injury or loss suffered by Jackie Cross.

Even if Plaintiff could establish that Sergeant Donegan violated his rights under federal or state law, Defendants would be entitled to qualified immunity. Plaintiff has not cited, nor has the Court identified, any cases holding that a supervising officer could be held liable under circumstances such as these.

The Court will enter judgment for Sergeant Donegan on all federal and state claims related to his allegedly supervisory role in Plaintiff's investigation and indictment.[1]

### C. Federal Claims Against Sergeant Donegan For His Handling of Plaintiff's OPA Complaint against Detective Loucks

Plaintiff alleges that Sergeant Donegan's handling of his OPA complaint against Detective Loucks violated his constitutional rights in the following ways: (1) by conducting the investigation into Plaintiff's OPA complaint even though he was himself involved in the investigation that led to Plaintiff's arrest; (2) by conducting an insufficient investigation in that he did not review any of the documentary evidence, did not interview the officers who had been at the scene of the Wal-Mart and was inappropriately informal in his interview of ADA Homlar; and (3) by exonerating Loucks based on the grand jury's return of a "true bill" against Plaintiff. Although Plaintiff cites cases on the standard for supervisory responsibility, he fails to cite a single case relevant to these substance of

---

[1] Plaintiff also asserts a claim of "deliberate indifference" against Defendant Donegan for his actions as a member of the Operation Death Cooker task force and as Louck's immediate supervisor, for his pursuit of criminal charges against Plaintiff without probable cause (Docket No. 72 at ¶ 62). Plaintiff does not include any legal analysis or arguments in his response to Defendants' motion for summary judgment to support this claim. As Plaintiff has abandoned this claim, the Court will enter judgment for Defendant Donegan. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

the allegations, either to set forth the proper legal standard for considering the claim or to support his assertion that Sergeant Donegan's handling of the OPA violated the constitution. Docket No. 112, at 15–17 (Pl.'s Br.). As the Sixth Circuit has held, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted). In addition to this argument being waived, the Court finds no basis upon which it might conclude that Sergeant Donegan's handling of the OPA was unconstitutional.

Furthermore, even if Plaintiff could establish that Sergeant Donegan violated his rights under federal or state law, he would be entitled to qualified immunity on each of Plaintiff's claims. Plaintiff has not cited, nor has the Court identified, clearly established law at the time of these events that would have put Donegan on notice that handling a complaint against a subordinate in a matter in which he was peripherally involved, not conducting a more formal or thorough investigation of a complaint brought against his subordinate in circumstances such as these, or exonerating a subordinate after a grand jury returns a true bill would constitute a constitutional violation now or at the time of Sergeant Donegan's conduct.

### D. State Law Claim for False Light Against Detective Loucks and Defendant Donegan

The Sixth Circuit has held that "generally, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (internal punctuation and citation omitted). A district court is to "consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Id.* The false-light claim is sufficiently distinct

from the claims the Court has addressed herein that the Court declines to decide this state-law question. This claim will be dismissed without prejudice.

**III.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff seeks summary judgment on the issue of probable cause, arguing that there is no genuine issue of material fact regarding the lack of existence of probable cause for pursuit of criminal charges against the Plaintiff. As the foregoing analysis demonstrates, the Court need not reach this legal issue to resolve the claims in this matter.

## CONCLUSION

For these reasons, the Court will GRANT Defendants' Motion for Summary Judgment in part. The Court will enter judgment for Defendants Donegan and Loucks on all of Plaintiff's federal and state claims except for the false light claim, which the Court will dismiss without prejudice. Plaintiff's Motion for Partial Summary Judgment will be DENIED as moot.

An appropriate order is filed herewith.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE